United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 30, 2001**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 00-10216

In the Matter of: KAYLA SEGERSTROM,

                                        Debtor

--------------------

ROBERT YAQUINTO, JR. As Trustee for the Estate of Kayla
Segerstrom

                                        Appellant,
                        versus

KAYLA SEGERSTROM; EMPLOYERS FIRE INSURANCE COMPANY;
TOUCHSTONE, BERNAYS, JOHNSTON, BEALL & SMITH LIMITED
LIABILITY PARTNERSHIP,

                                        Appellees.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before JOLLY, MAGILL[*] and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

    Robert Yaquinto, Jr., as trustee of Kayla Segerstrom's

Chapter 7 bankruptcy estate, appeals from a summary judgment in

favor of defendants Touchstone, Bernays, Johnston, Beall & Smith

L.L.P. and Employers Fire Insurance Company on the estate's legal

malpractice, breach of fiduciary duty and breach of contract

---

    [*] Circuit Judge of the Eighth Circuit, sitting by
designation.

claims.  Yaquinto also appeals the district court's denial of the estate's motion to compel discovery of certain communications between Kayla Segerstrom and her attorneys.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Kayla Segerstrom, then 17 years old, drove a van across the center line and struck head on a 1986 Honda Civic carrying the Colvin family.[1]  Just over a year after the accident, the Colvins sued Segerstrom, her parents, and her parents' sole proprietorship D&R Enterprises (D&R) in Texas state court for negligence, negligent entrustment, and failure to train/vicarious liability respectively (the Colvin litigation).

The van Segerstrom drove was covered by a $75,000 motor vehicle insurance policy issued by Employers Fire Insurance Company (Employers) to D&R.  D&R also had a $1 million comprehensive general liability policy issued by Commercial Union Insurance, Employers' parent company.  Employers hired Touchstone, Bernays, Johnston, Beall & Smith, L.L.P. (Touchstone) to defend Segerstrom, her parents, and D&R.

Segerstrom has acknowledged responsibility for the accident, which occurred after she turned her attention from the road to a ringing cell phone.  At trial, she testified that at the time of

_____

[1] The collision had tragic consequences.  Three-year old Cole Colvin died instantly.  James Bradley Colvin, Cole's father, suffered severe and permanent brain damage.  Two-year old Breana Colvin suffered a broken neck.  Her mother, Terri Colvin, endured serious facial and body lacerations.

2

the accident she was driving the van without her parents' permission, and that she was not using the van in connection with any D&R business.[2] The Colvins argued that D&R shared liability for the accident because the company failed to train Segerstrom not to answer a ringing cell phone while driving the company van. The jury returned a verdict in excess of $6.5 million in favor of the Colvins, but found only Kayla Segerstrom liable. The state court eventually entered judgment against Segerstrom in excess of $8.5 million. Employers immediately tendered its $75,000 policy limits.

On February 6, 1998, the Colvins filed an involuntary bankruptcy petition against Segerstrom. *See* 11 U.S.C.A. § 303 (West 1993). Segerstrom consented to the entry of an order for relief.[3] The bankruptcy court granted a motion by Robert Yaquinto to hire Bellinger & DeWolf (Bellinger), the firm that had represented the Colvins, as special counsel to pursue claims against Touchstone and Employers on a contingency basis.

With Bellinger's assistance, the estate filed a complaint

---

[2] Segerstrom's parents were out of town at the time of the accident; they had left her under the care of her grandmother. Segerstrom testified that both of her parents independently told her not to drive the van. At the time of the accident, Segerstrom said that she was driving to a friend's house.

[3] The only creditors that filed claims against Segerstrom's estate were the Colvins, an attorney and law firm that had represented the Colvins in the Colvin litigation, and a car leasing company. The stay was lifted to allow the leasing company to recover its car, leaving only the Colvins and their lawyers as claimants.

3

against Touchstone and Employers on behalf of Segerstrom's estate alleging negligence, gross negligence and breach of fiduciary duty in connection with the Colvin litigation (the malpractice suit). The complaint alleged that Touchstone had an inherent conflict of interest in representing Segerstrom, her parents, and D&R as defendants in the same litigation. According to the estate, this conflict caused Segerstrom to absorb 100% of the liability for the accident when that liability should have been shared with D&R. As to Employers, the estate alleged that the insurer violated the general duty of reasonableness Texas imposes on insurers by hiring only Touchstone to represent Segerstrom, her parents, and D&R. This breach rendered Employers directly liable for Touchstone's conflict of interest and the harm it caused Segerstrom. The complaint sought to recover for Segerstrom's estate $8.5 million – the value of the judgment assessed against Segerstrom in the Colvin litigation.

After the initiation of the malpractice suit, Segerstrom signed an affidavit stating that Touchstone "did an excellent job" during the state court litigation and that she had no basis for dissatisfaction with the firm's work. She also reported that Touchstone advised her of all litigation risks associated with the state court trial. As to the alleged conflict between Segerstrom and her parents, Segerstrom testified "[t]here was no conflict between my position and interest and those of my parents. My parents and I knew that they were not at fault and I

4

was not willing to lie or instruct my attorney to mislead others or try to shift blame to my parents."

In October 1998, Segerstrom's personal liability to the Colvins was discharged.

In the winter of 1999, Yaquinto filed motions to compel discovery of communications between Segerstrom and Touchstone that had been claimed by both parties as protected by attorney-client privilege. Yaquinto argued that he, as trustee, controlled Segerstrom's attorney-client privilege to the extent that it could be waived by filing a legal malpractice action. The district court referred the motions to compel to the bankruptcy court, which recommended they be granted. The district court rejected the bankruptcy court's recommendation, however, concluding that allowing the attorney-client privilege to transfer would inhibit its primary purpose: the facilitation of full and honest communications between attorneys and their clients. *Yaquinto v. Touchstone, Bernays, Johnston, Beall & Smith, L.L.P.*, 1999 WL 354228, *2 (N.D.Tex. 1999).

Following denial of the trustee's motions to compel, Touchstone and the estate filed cross motions for summary judgment on the pending legal malpractice claims, and Employers filed a motion for summary judgment on all claims pending against it. Adopting the Report and Recommendation of a magistrate judge, the district court granted summary judgment against the

estate on all claims.  Yaquinto now appeals those judgments, as well as the district court's denial of the motions to compel.

**DISCUSSION**

This case presents claims raised in an adversary proceeding over which the district court exercised jurisdiction pursuant to 28 U.S.C. § 1334.  Yaquinto timely provided notice of appeal, and this Court exercises jurisdiction pursuant to 28 U.S.C. § 1291.

## I.    The Summary Judgment Rulings

We review grants of summary judgment de novo, guided by the same standard as the district court: Federal Rule of Civil Procedure 56.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir. 1996).  Pursuant to Rule 56, a party may obtain summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  In determining whether a genuine issue of material fact exists, we view the evidence and inferences in the light most favorable to the nonmoving party.  *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

6

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**A.    The Estate's Legal Malpractice Claim Against Touchstone**

Touchstone urged the district court to grant summary judgment on the following grounds: (1) Segerstrom's bankruptcy estate did not include a legal malpractice claim against Touchstone because any such claim had been denied by Segerstrom, (2) any negligence by Touchstone did not cause Segerstrom injury because her personal liability on the state court judgment had been discharged, and (3) the estate could not prove that any negligence by Touchstone caused harm to Segerstrom in the Colvin litigation by demonstrating an alternative meritorious defense that would have led to a more favorable result for her.  The magistrate and district courts addressed only the first two grounds, finding in favor of Touchstone on both.  The estate's briefing and oral argument in this appeal focus on reversing the district court on these two issues.  Although the estate's arguments raise significant questions as to the propriety of the district court's analysis, it is well-settled that we may affirm a district court's grant of summary judgment on any ground articulated before that court. *See Chriceol v. Phillips*, 169 F.3d 313, 315 (5th Cir. 1999).  Because we conclude that the estate has not offered sufficient proof that Segerstrom suffered injury as consequence of Touchstone's representation during the Colvin litigation, we affirm the district court's summary judgment in favor of Touchstone.

7

At the outset, we briefly review the district court's holding with respect to whether Segerstrom's estate includes a legal malpractice claim against Touchstone.  Relying on Texas law, the district court determined that Segerstrom, and hence her estate, had no interest in an "unasserted, denied" legal malpractice claim against Touchstone.  *See Dauter-Clouse v. Robinson*, 936 S.W.2d 329, 332 (Tex. App. 1996, no writ)(holding that Texas law does not grant debtors a property interest in "an unasserted, denied legal malpractice claim.").  As a consequence, the court concluded that no cause of action became part of the bankruptcy estate.

It has long been established that federal bankruptcy law determines the scope of a debtor's bankruptcy estate.  *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-5 (1983).  Pursuant to section 541(a) of the Bankruptcy Act of 1986 (the Code), a debtor's bankruptcy estate consists of all "legal or equitable interests . . . in property as of the commencement of the case."  11 U.S.C. § 541(a) (1993).  The reference to all "legal or equitable interests" includes any "causes of action belonging to the debtor at the time the case is commenced." *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) (citations omitted).  A debtor's pre-petition rights in property, such as a cause of action, are determined according to state law.  *Butner v. United States*, 440 U.S. 48,

8

55, 99 S.Ct. 914, 918 (1979) (explaining that "[p]roperty interests are created and defined by state law" and, "[u]nless some federal interest requires a different result," should not be analyzed differently "simply because an interested party is involved in a bankruptcy proceeding."); *Louisiana World*, 858 F.2d at 252. This Circuit has relied on state law to determine (1) whether the debtor, as opposed to someone else, had a property interest in a right of action as of the commencement date, and (2) whether a right of action accrued pre-petition, and hence belonged to the estate, or post-petition. *See, e.g., Matter of Wheeler*, 137 F.3d 299, 300-01 (5th Cir. 1998); *Matter of Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir. 1994).

The district court's reliance on state law to define a debtor's rights in property based on *the debtor's post-petition conduct* is inconsistent with these organizing principles of bankruptcy estate law. *Butner* does not empower states to alter their property rights holdings in the bankruptcy context. To the contrary, *Butner* espouses the principle that property rights within a state should remain the same within and outside of bankruptcy. *See Louisiana World*, 858 F.2d at 252 ("*Butner* . . . stresses that federal bankruptcy law should not be used to work a substantive change in the ordering of property interests under state law."). For that reason, state law determines only whether a cause of action accrued to the debtor *as of the commencement of*

9

*the bankruptcy case*. Once that determination has been made, federal law controls whether a trustee can maintain the cause of action on behalf of the bankruptcy estate. Federal law provides that when a legal malpractice cause of action has accrued to a debtor as of the commencement of the bankruptcy case, it becomes part of the debtor's bankruptcy estate. *Educators' Group Health*, 25 F.3d at 1284.

As of the commencement of Segerstrom's bankruptcy case, a legal malpractice claim against Touchstone had accrued to Segerstrom according to Texas law. *See In re Swift*, 129 F.3d 792, 795-96 (5th Cir. 1997) (collecting Texas law on accrual of legal malpractice actions). Segerstrom never denied or waived that malpractice action *prior to the commencement of her bankruptcy*. Since Touchstone has provided no tenable basis in federal law for withholding Segerstrom's legal malpractice claim from her bankruptcy estate, we conclude that the estate can pursue that claim.

We now proceed to analyze whether the estate has presented sufficient evidence to survive Touchstone's motion for summary judgment on the legal malpractice claim. When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor. *See* 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.08 (15th ed. 1996). The trustee is subject to all defenses available against the debtor, and must

prove all elements that the debtor herself would be required to prove. *Stumph v. Albracht,* 982 F.2d 275, 277 (8th Cir. 1992); In *re Giorgio*, 862 F.2d 933, 936 (1st Cir. 1988). *See also Wiley v. Public Investors Life Ins. Co.*, 498 F.2d 101, 104 (5th Cir. 1974). To successfully prosecute Segerstrom's legal malpractice claim against Touchstone, Texas law requires that Yaquinto prove four elements: (1) Touchstone owed Segerstrom a duty; (2) Touchstone breached that duty; (3) the breach proximately caused injury to Segerstrom; and (4) damages resulted.[4] *See Streber v.*

---

[4] In an alternative holding, the district court determined that Yaquinto would be unable to prove any damages because Segerstrom's personal liability to the Colvins had been discharged. *See McClarty v. Gudenau*,176 B.R. 788, 790 (E.D. Mich. 1995) (holding that a chapter 7 trustee could not recover an excess judgment against the debtor's former attorney through a legal malpractice action because the debtor's personal liability had been discharged). We do not adopt the district court's holding. In *In re Edgeworth*, this Court held that a discharged debt "continues to exist" and judgment creditors "may collect from any other source that may be liable." *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993); 11 U.S.C. § 524(e) (2000) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). We noted in *Edgeworth* that the bankruptcy code's fresh start policy was not intended to allow insurers to escape obligations simply based on the "financial misfortunes of the insured." *Id*. Though *Edgeworth* does not control the present case because it involved a nominal suit against the debtor for the debtor's negligence and an insurance company's liability for that negligence, its rationale could be extended to include cases like this one. As we explained in *Edgeworth*, it makes little sense to allow those who have committed torts to escape liability because of the financial misfortunes of their victims. Moreover, allowing a cause of action to go forward on the facts of this case would not threaten financial harm to the debtor, thus the primary purpose behind the discharge would be protected. Because we are able to affirm the district court's judgment based on the issues of injury and

11

*Hunter*, 221 F.3d 701, 722 (5th Cir. 2000)(citations omitted); *Federal Deposit Insurance Corp. v. Shrader & York*, 991 F.2d 216, 221 (5th Cir. 1993)(citing *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 376 (Tex. 1984)).

The duty element is not at issue in this case. *See Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App. 1985, no writ) (recognizing that attorneys owe their clients a duty to perform in accordance with the standards of the profession); *Longaker v. Evans*, 32 S.W.3d 725, 733 (Tex. App. 2000, n.w.h.) (recognizing that attorneys owe their clients a fiduciary's duty of loyalty). Whether Touchstone breached either its duty of care or fiduciary duty has been contested; based solely on conflicting affidavit testimony, we assume that the estate has raised a material fact question as to whether Touchstone breached its duty of care by jointly representing all defendants in the Colvin litigation and/or failing to deflect responsibility for the accident from Kayla Segerstrom onto D&R. To avoid summary judgment, the estate must still provide evidence that Segerstrom suffered injury as a consequence of these alleged breaches.[5]  In this regard, the

---

causation under Texas law, however, we need not resolve this issue.

[5] The estate's complaint alleged breach of fiduciary duty in addition to negligence and gross negligence.  The estate maintains that it need not show injury or causation with respect to its breach of fiduciary duty claims.  While the Texas Supreme Court has dispensed with the need to prove an actual injury and causation when a plaintiff seeks to forfeit some portion of an

12

estate must prove "a suit within a suit" - it must demonstrate that but for the manner in which Touchstone conducted her defense, Segerstrom would have obtained a better result in the Colvin litigation. *See Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex. App. 1995, writ denied); *Heath v. Herron*, 732 S.W.2d 748, 753 (Tex. App. 1987, writ denied). While Segerstrom's post-petition affidavit testimony denying the existence of a legal malpractice claim is irrelevant to whether the claim becomes part of her bankruptcy estate in accordance with federal law, her testimony carries considerable weight in determining whether the estate has met its burden of establishing injury and causation in accordance with Texas law.

Initially, we examine whether the estate has offered sufficient evidence that *Segerstrom*, as opposed to her creditors, suffered injury in the Colvin litigation. According to the estate, Segerstrom suffered an injury because the jury awarded a large verdict against her when that verdict could have been

---

attorney's fees in connection with a breach of fiduciary duty, *see Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999), injury and causation are still required when a plaintiff seeks to recover damages for a breach of fiduciary duty. *See Longaker*, 32 S.W.3d at 733 n. 2 ("The holding [of *Burrow*] has no application . . . where the client/estate does not seek fee forfeiture, but rather seeks actual damages caused by the fiduciary's misconduct."). The estate's complaint does not seek a forfeiture of the fees Touchstone received for representing Segerstrom, rather the complaint alleges that "[a]s a direct and proximate result of Touchstone breaching its fiduciary duties, [Segerstrom] and her estate have suffered damages in excess of $8.5 million."

13

reduced if different litigation tactics had been employed. Segerstrom's affidavit testimony rejects the notion that she has suffered any injury. Segerstrom's independent appellate attorney points out that the strategic decision to accept responsibility for the accident during the Colvin litigation protected Segerstrom's own financial interests. At the time of the trial, Segerstrom lived with her parents and was dependent on them for financial (as well as moral) support. Any liability allocated to D&R would have damaged Segerstrom as well as her parents. Indeed, liability placed on D&R would have damaged Segerstrom far more than liability allocated to her, since she had no unencumbered personal assets.

The estate presumes that a conflict between Segerstrom's subjective views of her representation and the estate's conclusory analysis of that representation is sufficient to create an issue of fact as to injury. We disagree. Texas courts have recognized that legal malpractice actions are "intrinsically personal," and that the satisfaction of the client in a legal malpractice case is "paramount." *Charles v. Tamez*, 878 S.W.2d 201, 207 (Tex. App. 1994, writ denied); *see also Zuniga v. Gross, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App. 1994, writ ref'd.). "Unless [the client] is proved incompetent, he alone can determine if he believes that his counsel misrepresented him." *Charles*, 878 S.W.2d at 207. The estate has produced no

14

evidence suggesting either that Segerstrom did not receive the precise goal she sought in the Colvin litigation, or that she was not competent to protect her interests during the Colvin litigation. As a consequence, we conclude that the estate has failed to prove that Segerstrom suffered "injury," in the legal malpractice sense, in the Colvin litigation.

Beyond its failure to establish an injury to Segerstrom, the estate has failed to provide sufficient evidence that any malpractice by Touchstone caused Segerstrom to suffer an adverse judgment. The estate must prove not only that an alternative trial strategy was available to Segerstrom, but that Segerstrom would have pursued that strategy with independent representation. *See Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998) (requiring that plaintiff produce evidence that had he been informed of settlement offer, he would have accepted it, to satisfy causation element of a Texas deceptive trade practices claim). Segerstrom's affidavit testimony states clearly that she did not wish to cast blame for the accident on her parents or their business. The estate has produced no evidence to rebut this testimony or otherwise suggest that *Segerstrom* would have pursued the estate's proposed trial strategy under any circumstances. This deficiency alone causes the estate's claim to fail on causation grounds.

Additionally, the estate has produced insufficient evidence that its proposed strategy would have been meritorious. At

15

trial, Segerstrom testified that (1) she was driving the van in contravention of her parents' express orders, (2) independently of any D&R business, and that (3) she alone was responsible for the accident. In its "suit within a suit," the estate must demonstrate either that its alternative trial strategy would have overcome this testimony, or that Segerstrom perjured herself in the Colvin litigation. The estate has offered no evidence suggesting perjury. As to the possibility that Touchstone could have somehow overcome Segerstrom's trial testimony by actively attempting to cast blame onto D&R, the jury's verdict from the Colvin litigation indicates how meritorious that strategy would have been. The only evidence that Touchstone's alleged breaches caused Segerstrom to suffer an adverse judgment are conclusory statements in the affidavits of the estate's expert witnesses.[6] These conclusory statements are wholly unsupported by evidence in the record and therefore fail to create a genuine issue of material fact. *See Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (noting that "affidavits setting forth 'ultimate or conclusory facts . . .' are insufficient to either support or defeat a motion for summary judgment[,]" and that "[w]ithout more than credentials and a

_____

[6] Both experts state: "It is . . . my opinion that the failure to provide a defense and simultaneous representation of all defendants proximately caused Kayla Segerstrom to have entered against her a judgment in the amount of $6,895,000 in the Colvin litigation.".

16

subjective opinion, an expert's testimony that 'it is so' is not admissible.") (citations omitted).

In sum, we are persuaded that the estate has not satisfied its burden of proving that negligence by Touchstone caused injury to Segerstrom. The estate has failed to present sufficient evidence that (1) Segerstrom suffered injury, in the legal malpractice sense, (2) Segerstrom would have ever elected to pursue the estate's alternative trial strategy, or (3) the alternative trial strategy could have prevented Segerstrom from suffering an adverse judgment in the Colvin litigation. Consequently, the district court properly granted summary judgment for Touchstone.

B.    The Estate's Claims Against Employers

Yaquinto's action against Employers is also predicated on Touchstone's alleged conflict of interest in representing all three defendants. The district court granted summary judgment in favor of Employers because Employers had no independent duty to look into a conflict of interest and no reason to know of a conflict on the facts of this case. On appeal, the estate argues that it has offered sufficient evidence that Employers acted unreasonably in failing to hire an independent attorney for Segerstrom to survive a motion for summary judgment. This argument is based on Yaquinto's belief that "for Employers to fulfill its duty of reasonable care to [Segerstrom], it was obligated to hire a separate attorney to represent and advise the

17

debtor of her rights, options and exposure." We find no basis to disturb the district court's judgment.[7]

Texas requires that insurance companies act with reasonable care in fulfilling their duty to defend under insurance contracts. *See Meridian Oil Production, Inc. v. Hartford Accident & Indemn. Co.*, 27 F.3d 150, 153 (5th Cir. 1994); *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex. 1987). Generally, tort claims alleging breach of this duty have focused on an insurance company's failure to settle claims or interference with possibilities for settlement. *See, e.g., G.A. Stowers Furniture Co. v. American Indemn. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). Even assuming that Touchstone's representation of all three defendants in the Colvin litigation created a conflict of interests, Yaquinto points to no authority in Texas law suggesting that an insurer's duty of reasonable care requires the insurer to independently identify conflicts and take steps to address them prior to or at the same

---

[7] Yaquinto does not address the district court's holdings with respect to the breach of fiduciary duty and breach of contract claims in either its initial or reply brief. On this basis, we conclude that these claims have been waived. *See DSC Communications Corp. v. Next Level Communications*, 107 F.3d 322, 326 n. 2 (5th Cir. 1997). At any rate, the district court properly resolved the fiduciary duty claim because Texas does not recognize a fiduciary duty between insurers and their insureds, only a duty of reasonable care. *See Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex. App. 1990, writ denied). Moreover, Yaquinto provided no evidence that Employers' insurance contract required *independent* counsel for Segerstrom, or that Employers otherwise failed fulfill its contractual obligations.

18

time as appointing legal counsel.[8]  Therefore, unless Employers

disregarded notice from Touchstone of a conflict, a fact that

Yaquinto has no evidence of,[9] any liability imposed on Employers

would be vicarious and hence not recognized by Texas law.  *See*

*State Farm Mut. Ins. Co. v. Traver*, 980 S.W.2d 625, 628-29 (Tex.

1998).  Moreover, even assuming that Employers had a duty to

prevent the conflict and breached that duty, the estate has

provided insufficient evidence linking the judgment against

Segerstrom to that breach.  Absent such evidence, the estate has

no basis on which to claim damages from Employers.

---

[8] While the Texas Supreme Court's decision in *Ranger* contains language suggesting that insurers have a broad independent duty to investigate, litigate and settle cases on behalf of insureds, *Ranger*, 723 S.W.2d at 659 (affirming jury finding that insurer's failure to notify insured of settlement offers constituted direct negligence), the Texas Supreme Court has consistently limited *Ranger*, reinforcing that the *Stowers* doctrine provides the primary measure of insurer reasonableness under its duty to defend.  *See, e.g., American Physicians Ins. Exchange v. Garcia*,, 876 S.W.2d 842, 849 (Tex. 1994) ("[E]vidence concerning claims investigation, trial defense, and conduct of settlement negotiations is necessarily subsidiary to the [*Stowers* doctrine].").  We will not extend a doctrine that Texas law has consistently retracted.

[9] Yaquinto argues that the district court improperly denied his motion for a Rule 56(f) extension, since the existence of such a communication is a fact question.  However, Yaquinto points to no additional discovery that might provide evidence of such a communication.  From the record, it is clear that Yaquinto has already deposed the Employers representative that handled this case.  Moreover, district courts have considerable discretion in ruling on motions to suspend summary judgment pending discovery.  *See Stearns Airport Equipment Co., Inc. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999).

19

## II.  Denial of the Estate's Motions to Compel Discovery

Yaquinto also appeals the district court's denial of the estate's motion to compel discovery of communications between Segerstrom and Touchstone.  Having concluded that Yaquinto cannot successfully maintain a legal malpractice claim against Touchstone for the reasons stated previously, we need not reach this issue.  Even assuming we were to rule in Yaquinto's favor, remand would not be necessary because Yaquinto could not discover evidence that would support a finding of harm or causation on the facts of this case.

### CONCLUSION

Yaquinto, on behalf of Segerstrom's bankruptcy estate, has failed to offer sufficient evidence that Segerstrom (1) suffered injury in the Colvin litigation, (2) as a consequence of Touchstone's representation.  The estate's claims against Employers fail because the insurer had no duty to investigate potential conflicts when fulfilling its obligation to defend Segerstrom and had no independent knowledge of a conflict that could support a finding of direct negligence.  Consequently, we AFFIRM the district court's grant of summary judgment.