# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2009

Charles R. Fulbruge III
Clerk

No. 08-50477

INA EARLENE FISHER, ETC; ET AL

                                        Plaintiffs

v.

MIOCENE OIL AND GAS LIMITED; ET AL

                                        Defendants

v.

MARVIN DAN FISHER INC; VIN FISHER OIL COMPANY; INA EARLENE
FISHER, Independent Executrix and Trustee Under the Will of Marvin
McKinley Fisher Deceased; MARVIN DAN FISHER

                                        Cross Defendants - Appellees

v.

NOLA JAN FISHER GREAVES

                                        Cross Claimant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:04-cv-101

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

JACQUES L. WIENER, JR., Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.

Cross Claimant-Apellant Nola Jan Fisher Greaves ("Mrs. Greaves") appeals the district court's denial of relief on her claim that her mother, Cross Defendant-Appellee Ina Earlene Fisher ("Mrs. Fisher") breached her fiduciary duty as the trustee of two trusts. Despite its determination that Mrs. Fisher had breached her fiduciary duty vis a vis Mrs. Greaves, the trial court refused to grant relief on that claim on the specific ground that Mrs. Greaves had failed to prove damages by a preponderance of the evidence. She appeals that ruling, and Mrs. Fisher counters with potential alternative bases for affirming the district court, *viz.*, that the transactions were either permitted or that they should stand irrespective of her breach. Concluding both that Texas law does not require proof of monetary damages as an element of Mrs. Greaves's claim for breach of fiduciary duty and that there is no alternative basis for affirmance, we vacate the district court's judgment and remand to that court with instructions to enter a judgment voiding the challenged self-dealing transactions.

## I. FACTS AND PROCEEDINGS

Marvin McKinley Fisher, Jr. (the "Decedent") died on July 6, 2001. His will appointed his widow, Mrs. Fisher, as executrix of his estate and trustee of two testamentary trusts (collectively, the "Trust"). She is the initial beneficiary of the Trust. Her children, Mrs. Greaves and Marvin Dan Fisher ("Dan Fisher"), together with their respective children, are contingent remainder beneficiaries. This appeal concerns claims filed by Mrs. Greaves against Mrs. Fisher, Dan Fisher, his wholly-owned corporation, Marvin Dan Fisher, Inc. ("MDFI"), and Dan Fisher's son's company, Vin Fisher Oil Company (collectively, the "Appellees").

The seeds of this dispute were sown when Mrs. Fisher, Mrs. Greaves, and Dan Fisher (collectively, the "Plaintiffs") sued Miocene Oil and Gas to terminate

an oil and gas lease on property in which the Trust owns a fractional interest in the mineral rights.[1] On March 24, 2005, the Plaintiffs signed a Mediated Settlement Agreement with Miocene. Together with their attorney, Ted Kerr, the Plaintiffs began negotiations aimed at reaching consensus on the documents required to consummate the settlement with Miocene. Mrs. Greaves objected to several of the draft documents. Despite awareness of these objections, Mr. Kerr, Mrs. Fisher, and Dan Fisher met with Micocene's president and, on October 13, 2005, executed documents that Mrs. Greaves had never seen, much less consented. These documents had the legal effects of releasing Miocene's lease and assigning the Trust's interests in several wells, equipment, and personal property to MDFI.[2] Mrs. Greaves did not receive copies of these documents until five days after their execution.

In December 2005, Mrs. Fisher executed a new oil and gas lease with MDFI that covered 320 acres in which the Trust owns mineral interests. The Trust received a 25% royalty and a $4,800 bonus. Mrs. Greaves did not learn of these transactions until late in February of 2006. She filed the instant cross claim in August 2006, seeking damages and other relief for breach of fiduciary duty, fraud, and civil conspiracy.

After a four-day bench trial, the district court concluded that Mrs. Fisher violated section 113.053 of the Texas Property Code by selling Trust property to a relative but denied relief because Mrs. Greaves had failed to prove damages.[3]

---

[1] Mrs. Greaves and Dan Fisher also individually own fractional interests in the mineral rights in the property, but this appeal concerns only those owned by the Trust.

[2] Apparently, some rights were also transferred to Dan Fisher's son's company, Vin Fisher Oil Company. That fact does not alter the analysis of this opinion.

[3] Although Mrs. Greaves originally sought damages, she now asks only that Mrs. Fisher's transactions with her son and his companies be annulled.

Mrs. Greaves filed two motions to alter or amend the judgment, neither of which resulted in her desired changes.

Mrs. Greaves appeals, arguing primarily that proving damages is not a prerequisite to voiding a trustee's self-dealing transactions for breach of a fiduciary duty.[4]

## II. ANALYSIS

### A.    Standard of Review

In an appeal from a bench trial, we review the trial court's factual findings for clear error and its legal conclusions *de novo*.[5]  In this diversity case, we apply the substantive law of the forum state, here Texas.[6]

### B.    Whether Proof of Damages Is Required to Void a Transaction for a Breach of Fiduciary Duty

In the instant case, Mrs. Greaves seeks only to *void* the alleged self-dealing transactions; she asks for no monetary relief.  Despite having held that Mrs. Fisher breached her fiduciary duty, the district court nevertheless conceived Mrs. Greaves's cause of action for annulment of self-dealing transactions to be dependent on a showing of damages.  Citing the Texas

---

[4] The Appellees, without citing any authority, conclusionally assert that Mrs. Greaves has waived the remedy of voiding the alleged self-dealing transactions.  We deem the Appellees' argument abandoned for inadequate briefing.  *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).  In any event, if we were to reach the merits of this issue, we would consider that (1) Mrs. Greaves's cross claim requested "such other relief as may be appropriate"; (2) at trial, Mrs. Greaves testified, without objection, that the transaction should be set aside; and (3) at least under Texas law, a plaintiff who pleads alternative theories of recovery may elect her remedies after the verdict, *see State v. Fiesta Mart, Inc.*, 233 S.W.3d 50, 56 n.4 (Tex. App. — Houston [14th Dist.] 2007, pet. denied).

[5] *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009) (per curiam).  To the extent that a district court's denial of a motion to alter or amend judgment was based on a question of law, we review the denial *de novo*.  *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Works Int'l Union Local 4-487*, 328 F.3d 818, 820 (5th Cir. 2003).

[6] *Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, --- F.3d ---, 2009 WL 1089434, at *2 (5th Cir. 2009); *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

appellate decision in *Punts v. Wilson*, the district court observed that to recover for the breach of a fiduciary duty, Mrs. Greaves had to establish that (1) a fiduciary relationship existed between Mrs. Fisher and Mrs. Greaves; (2) Mrs. Fisher breached that duty; and (3) the breach caused either injury to Mrs. Greaves or benefit to Mrs. Fisher.[7] As far as it goes, that is a correct statement of Texas law which Texas courts have repeated often.[8] And, obviously, a plaintiff who seeks to recover monetary damages for the breach of a fiduciary duty must prove not only a breach of that duty but both the causation and quantum of damages as well.[9] Yet, monetary damages is not the only possible legal injury that may result from such a breach, so monetary damages is not the only relief available for a fiduciary's self-dealing. Another available remedy is the avoidance of the fiduciary's self-dealing transactions, a remedy for which damages simply need not be proved.[10] "[S]elf-dealing transactions may be attacked by the beneficiary *even though he has suffered no damages* and even though the trustee has acted in good faith,"[11] *viz.*, a self-dealing transaction itself

---

[7] *See Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App. — Texarkana 2004, no pet.).

[8] *See, e.g.*, *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 540 (Tex. App. — Tyler 2008, pet. filed); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. — Houston [14th Dist.] 2008, pet. denied).

[9] *Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 225 n.5 (5th Cir. 2001) (citing *Longaker v. Evans*, 32 S.W.3d 725, 733 n.2 (Tex. App. — San Antonio 2000, pet. withdrawn)).

[10] *See Nabours v. McCord*, 100 S.W. 1152, 1154–55 (Tex. 1907).

[11] *Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex. App. — Austin 1980, writ ref'd n.r.e.) (emphasis added); *see Burrow v. Arce*, 997 S.W.2d 229, 239 (Tex. 1999) ("It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.") (internal quotation marks omitted); *Nabours*, 100 S.W. at 1154–55 ("It does not matter that a greater sum could not have been procured at that time from other parties, for the self-interest of the trustee in the

constitutes an injury *vel non*, the undoing of which is an available remedy. A fiduciary's self-dealing transaction is not void per se, but is instead *voidable* at the election of the beneficiary.[12] In fact, Texas law appears to entitle a plaintiff to both damages *and* avoidance of the same self-dealing transaction, provided only that the relief does not constitute a double recovery.[13]

The Appellees cite no Texas case — and we have found none — in which a plaintiff requested the equitable remedy of rescission for a breach of fiduciary duty and the court ruled for the defendant based only on the plaintiff's failure to prove damages, despite ruling that such breach had occurred. As Mrs.

---

transaction was such a vice as 'leaveneth the whole lump' and renders the transaction voidable at the election of the [beneficiary] without looking further into the matter than to ascertain that the interest existed."); *Snyder v. Cowell*, No. 08-01-00444-CV, 2003 WL 1849145, at \*3 (Tex. App. — El Paso Apr. 10, 2003, no pet.) (mem. op.) (stating that if the "trustee violated his fiduciary duty not to self-deal, the beneficiary may have had a cause of action to repudiate the . . . transaction or to hold the trustee personally liable"); *Crenshaw*, 611 S.W.2d at 891 (discussing "the presumption of the existence of fraud inaccessible to the eye of the court" in self-dealing cases).

[12] *Nabours*, 100 S.W. at 1154–55; *Snyder*, 2003 WL 1849145, at \*3. In Texas, the terms "voidable" and "void *ab initio*" have distinct legal meanings. "If an action is void or void ab initio, the transaction is a nullity. If, however, conduct is merely voidable, the act is valid until adjudicated and declared void." *Love Terminal Partners v. City of Dallas*, 256 S.W.3d 893, 897 (Tex. App. — Dallas 2008, no pet.) (citation omitted). The "voidable"/"void *ab initio*" distinction is the same as that between "voidable" and "void." *Id.* at 897 n.7.

[13] *See Slay v. Burnett Trust*, 187 S.W.2d 377, 393 (Tex. 1945) (indicating that the beneficiary may "choose the remedy which is more advantageous to him," but that this "right of election" applies only when it is used "to prevent a double redress for a single wrong"); *Acevedo v. Stiles*, No. 04-02-00077-CV, 2003 WL 21010604, at \*1 (Tex. App. — San Antonio May 7, 2003, pet. denied) (mem. op.) ("If both rescission and damages are essential to accomplish full justice, they may both be awarded."). In the instant case, however, as confirmed at oral argument, Mrs. Greaves no longer seeks damages.

Greaves seeks no monetary damages here, such damages are not an element of her claim for recision for a breach of fiduciary duty.[14]

## C.  Whether Mrs. Fisher Was Authorized to Enter into Transactions with her Son

Having concluded that the district court erred in requiring proof of monetary damages as a requisite to granting the remedy of recision, we next consider the Appellees' argument that the district court's decision should be affirmed on the alternative ground that Mrs. Fisher breached no duty.  They offer three principal theories of how the contested transactions might be held to have been entered into properly:  (1) the Trust permitted Mrs. Fisher to do so as trustee; (2) the will permitted her to do so as executrix; and (3) the will also permitted her to do so by exercising the special power of appointment that it conferred on her.  We reject each theory for the reasons that follow in turn.

### 1.  Mrs. Fisher as Trustee

The district court determined that (1) Mrs. Fisher, as trustee, owed Mrs. Greaves a fiduciary duty and (2) Mrs. Fisher breached that duty by selling Trust property to her son.  Mrs. Fisher asserts that the Trust permitted her, as trustee, to enter the transactions.

---

[14] To be clear, we have previously rejected the argument that Texas law has abolished *in toto* a showing of damages and causation for breach of fiduciary duty claims.  We have said:

> While the Texas Supreme Court has dispensed with the need to prove an actual injury and causation when a plaintiff seeks to forfeit some portion of an attorney's fees in connection with a breach of fiduciary duty, *see Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex.1999), injury and causation are still required when a plaintiff seeks to recover damages for a breach of fiduciary duty.

*Yaquinto*, 247 F.3d at 225 n.5 (citing *Longaker*, 32 S.W.3d at 733 n.2) ("The holding [of *Burrow*] has no application . . . where the client/estate does not seek fee forfeiture, but rather seeks actual damages caused by the fiduciary's misconduct."); *see Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 82 F. App'x 116, 118 (5th Cir. 2003) (unpublished and non-precedential) ("*Burrow*'s holding . . . only applies to forfeiture, not to claims for actual damages.  To recover damages, a plaintiff must still prove causation.").

Texas Property Code section 113.053 places unambiguously mandatory restrictions on a trustee's dealings with trust property: "[A] trustee shall not directly or indirectly buy or sell trust property from or to . . . a relative of the trustee . . . ."[15] A settlor — here, the Decedent — may, however, modify particular default provisions of the Texas Property Code to allow, *inter alia*, transactions between the trustee and his relatives.[16] A settlor's mere grant of "broad powers," however, is insufficient to support the assertion that the settlor intended to circumvent any one or more provisions of the default law.[17] Unless the settlor's intention is otherwise clear, modifications of the default law must be in explicit terms.[18]

---

[15] TEX. PROP. CODE § 113.053(a)(3); *see id.* § 111.004(13) (defining "relative" to include a descendent). There are several statutory exceptions to this rule located in subsections (b)–(g) of section 113.053, none of which are at issue here.

[16] TEX. PROP. CODE § 113.059(a) (repealed 2006). The repealed section 113.059 applies to the instant case because the alleged self-dealing transactions occurred before January 1, 2006. Act of May 24, 2005, 79th Leg. R.S., ch. 148, § 31. The current statute, section 111.0035, also allows a settlor to opt out of many of the default rules governing trusts. *See* TEX. PROP. CODE § 111.0035(b).

[17] *See Price v. Johnston*, 638 S.W.2d 1, 4 (Tex. App. — Corpus Christi 1982, no writ) ("Texas courts have never interpreted liberally the broad powers of management as a justification for lessening the high standards to which fiduciaries are held under the Texas Trust Act.").

[18] *See id.* at 4 ("Since the will does not specifically permit the sale to a 'relative,' the Texas Trust Act must apply, which prohibits the intended sale."); *Jochec v. Clayburne*, 863 S.W.2d 516, 520 (Tex. App. — Austin 1993, writ denied) (providing that when the settlor's intent is ambiguous, "as a general rule of construction, exculpatory provisions included in trust instruments are strictly construed, and the trustee is relieved of liability only to the extent which it is clearly provided he shall be excused" (internal quotation marks omitted)); *Jewett v. Capital Nat'l Bank of Austin*, 618 S.W.2d 109, 112 (Tex. Civ. App. — Waco 1981, writ ref'd n.r.e.) (same).

The Appellees nevertheless contend that the "terms of the Trust"[19] permit self-dealing transactions. Like the district court before us, we disagree. Although the Trust establishes that the Decedent intended for the trustee to have broad general powers,[20] it contains no hint that self-dealing with the trustee's children might be permitted.

In connection with our determining whether Mrs. Fisher, as trustee, had the power to enter transactions with her son, we are asked by the Appellees to consider not only the broad powers conferred on Mrs. Fisher directly in her capacity as trustee, but also those powers conferred on her in her capacity as executrix of the Decedent's estate and as the holder of a special power of appointment under the will. Stated differently, the Appellees urge us to look beyond the powers that Mrs. Fisher derives directly from her role as trustee. Although we recognize that Mrs. Fisher wears at least three "hats" in the instant appeal (all of which flow from the Decedent's will), we are chary to infer by

---

[19] The phrase "terms of the trust" is statutorily defined to mean "the manifestation of intention of the settlor with respect to the trust expressed in a manner that admits of its proof in judicial proceedings." TEX. PROP. CODE § 111.004(15).

[20] For example, paragraph II.B.9 of the will, titled "Expansion of Powers," says in part:

> [M]y trustee shall have, all and singular, all powers and privileges now or hereafter granted by law to trustees in the State of Texas, including, but not limited to, those powers granted by the Texas Trust Code, and all other powers, duties and privileges which may be reasonably proper, necessary or incident to the carrying out of these trusts, whether herein specifically enumerated or not, it being declared to be the intention hereof that my trustee, subject always to the discharge of her fiduciary obligations, shall have full, complete and plenary powers in carrying out this trust, or these trusts, in accordance with the provisions hereof, and this will shall be given a broad, liberal and comprehensive construction and interpretation in order that my trustee shall be clothed with all the powers and authorities reasonably necessary or proper in carrying out such trust or trusts.

Additionally, paragraph II.C. of the will exculpates the trustee for liability to the Trust's beneficiaries as long as the trustee does not commit fraud, embezzlement, or willful breach of trust.

reference to a trustee's other offices that her powers as trustee are somehow expanded thereby. Resorting to such a reference would have the perverse effect of expanding or contracting the powers of the trustee, depending on who is serving as trustee at any given moment. In this case, for example, Mrs. Fisher will not always be the one serving as the trustee; by the will's terms, once Mrs. Fisher ceases to serve as trustee (presumably by resignation, incapacity, removal, or death) her children will become co-trustees (they could have become the initial trustees if Mrs. Fisher had failed to serve). If we were to rely on Mrs. Fisher's powers in other capacities to expand her powers as trustee, we would risk conferring too much or too little authority on subsequent trustees who may wear only the "trustee hat." We conclude that Mrs. Fisher, as trustee, lacked authority to enter into the disputed self-dealing transactions, whether or not she also served as executrix or enjoyed a special power of appointment.

### 2.    Mrs. Fisher as Executrix

The Appellees assert that even if Mrs. Fisher could not enter the disputed transactions in the capacity of trustee, she validly entered them in her capacity as executrix of the Decedent's estate, a capacity under which, she claims, she was subject to no self-dealing ban. The Texas Supreme Court has said, however, that "[t]he executor of an estate is held to the same fiduciary standards in his administration of the estate as a trustee."[21] Consistent with this statement, the Decedent's will emphasizes that "[i]n addition to having" the powers and duties of an executor under Texas law "my executrix shall have the same powers, duties, privileges, authorities, and responsibilities of my trustee." Texas law and the terms of the will thus confirm that the trustee's duty not to self-deal also applies to Mrs. Fisher as executrix as well.

---

[21] *Humane Soc'y of Austin & Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975); *see In re Roy*, 249 S.W.3d 592, 596 (Tex. App. — Waco 2008, pet. denied).

Even if we were to assume *arguendo* that an executor is permitted to self-deal, we would defer to the district court's factual determination that in this case Mrs. Fisher acted solely in the capacity of trustee, and neither as executrix nor as special appointee. As that finding is not clearly erroneous — at trial, Mrs. Fisher testified that she, *as trustee*, entered an oil and gas lease with her son's company — we still would not disturb it.

### 3.    Mrs. Fisher as Holder of a Special Power of Appointment

The Appellees contend — for the first time on appeal — that even if Mrs. Fisher *as trustee* was prohibited from entering the disputed transactions, *as the holder of a special power of appointment* under the will, she not only possessed the power to enter the disputed transactions with her son, but in fact did so pursuant to that authority.[22] As the Appellees failed to raise this argument adequately in the district court, they waived it, and we do not reach it.[23]

Having considered and rejected each of the Appellees' proffered rationales for interpreting the will to permit Mrs. Fisher to enter the contested transactions with her son, we hold that when she did so she breached her fiduciary duty to Mrs. Greaves.

### D.    Other Putative Bases for Ruling in Favor of Appellees

Undeterred, the Appellees urge that, even though Mrs. Fisher breached her fiduciary duty, we should affirm the district court, either by ratifying the prohibited transactions or by preventing their revocation, because Dan Fisher's

---

[22] Paragraph IV.A. of the will, "Special Power of Appointment," permits Mrs. Fisher, "in her absolute discretion" to direct the trustee to transfer Trust assets by deed and free of trust to one or more of her children.

This special power of appointment applies only to one of the two testamentary trusts. The Appellees represent that the property at issue in this appeal concerns only "Trust A," the trust to which Mrs. Fisher may exercise her power of appointment.

[23] *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005) ("Arguments not raised in the district court are waived.").

company, MDFI, acted as a bona fide purchaser. This argument is unpersuasive under either theory.

### 1. Ratification of Contested Transactions

A now-repealed Texas statute once gave courts the authority, "for cause shown and upon notice to the beneficiaries," to "wholly or partly release and excuse a trustee, who has acted honestly and reasonably, from liability for violations of provisions of [the Trust] Act."[24] Contrary to the Appellees' asserted interpretation, current Texas law does not confer this same power on the courts. Specifically, the statute that the Appellees label as a re-enactment of the repealed statute "with no substantial change" — section 115.001(a)(8) of the Property Code — is not a clone of the repealed law but is merely a jurisdictional statute titled "Jurisdiction."[25] It states that "[a] district court has original and exclusive jurisdiction over all proceedings by or against a trustee and all proceedings concerning trusts, including proceedings to . . . relieve a trustee from any or all of the duties, limitations, and restrictions otherwise existing under the terms of the trust instrument or of this subtitle."[26] The specific proceedings that would modify the terms of the trust instrument are those set forth in section 112.054(a).[27] This statute provides:

> (a) On the petition of a trustee or a beneficiary, a court may order that the trustee be changed, that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, that the

---

[24] TEX. REV. CIV. STAT. art. 7425b-24(E) (Vernon 1960) (repealed 1983).

[25] TEX. PROP. CODE § 115.001.

[26] *Id.* § 115.001(a)(8).

[27] *Alpert v. Riley*, 274 S.W.3d 277, 290 (Tex. App. — Houston [1st Dist.] 2008, pet. denied) ("A court's authority to modify a trust's terms is subject to section 112.054(a) of the Texas Trust Code . . . .").

trustee be prohibited from performing acts required by the terms of the trust, or that the trust be terminated in whole or in part, if:

> (1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill;
>
> (2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust;
>
> (3) modification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the trust's administration;
>
> (4) the order is necessary or appropriate to achieve the settlor's tax objectives and is not contrary to the settlor's intentions; or
>
> (5) subject to Subsection (d) [which requires unanimous consent of the beneficiaries]:
>
> > (A) continuance of the trust is not necessary to achieve any material purpose of the trust; or
> >
> > (B) the order is not inconsistent with a material purpose of the trust.[28]

Without referring to any of the five exclusive grounds for permitting Mrs. Fisher to engage in otherwise forbidden transactions, the Appellees baldly contend that we should ratify those transactions because Mrs. Fisher acted in good faith and on fair and reasonable terms in preservation of the Trust's assets. More significantly — and fatal to their argument — the Appellees do not bother

---

[28] TEX. PROP. CODE § 112.054(a). If the subject private trust were a charitable trust, "there [would be] greater occasion for the exercise of the power of the court to permit or direct a deviation from the terms of the trust because of the *cy pres* doctrine, . . . [which] goes quite beyond anything that is permitted in the case of private trusts." *Alpert*, 274 S.W.3d at 289–90 (internal quotation marks omitted).

to cite section 112.054 *at all.*[29] But, even if the Appellees had offered a more structured argument for ratifying the transactions, we would deny the *retrospective* equitable relief that they seek. Of the five exclusive grounds for permitting an otherwise prohibited transaction, the statute singles out only the tax-objective provision, subsection (a)(4), for such post hoc relief, stating that "[t]he court may direct that an order described by Subsection (a)(4) has retroactive effect."[30] Under the doctrine of *inclusio unius est exclusio alterius*,[31] only subsection (a)(4)'s tax-provision may be given retroactive effect; relief under all other subsections must be requested and obtained prospectively, which, of course, Mrs. Fisher failed to do. We will not modify the terms of the Trust to permit the disputed transactions.

### 2. MDFI as Bona Fide Purchaser

The Appellees contend, again for the first time on appeal, that the contested transactions may not be revoked because Dan Fisher's company, MDFI, was a bona fide purchaser under section 114.081(a) of the Texas Property

---

[29] *See Alpert*, 274 S.W.3d at 90 ("Riley has not identified any of the factors under section 112.054(a) as grounds for his request that the trial court authorize a deviation from the trusts' terms. Without basis in one of the statutory grounds, the trial court lacked the power to deviate from the trusts' terms.").

[30] T EX. PROP. CODE § 112.054(c).

[31] *See City of Houston v. Williams*, --- S.W.3d ---, 2009 WL 838571, at *9 (Tex. App. — Houston [14th Dist.] 2009, no pet.) (applying "*inclusio unius* . . ." to Texas statutory interpretation).

Code.[32] "[S]tatus as a bona fide purchaser is an affirmative defense . . . ."[33] Although waiver applies to affirmative defenses that are not pleaded,[34] "a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."[35] We hold, however, that by failing to raise the issue at the district court at all, the Appellees waived it.

Yet again, even if we were to assume *arguendo* that the bona fide purchaser claim was properly before us, we would reject it as meritless. According to the district court's findings of fact, to which we would defer as not clearly erroneous, MDFI had prior knowledge of Mrs. Greaves's interest in the Trust's property as a beneficiary and of her objection to the transactions.[36] Even if they had preserved the argument, the Appellees could not prevent revocation of the disputed transactions on the ground that MDFI was a bona fide purchaser.

## III. CONCLUSION

The district court concluded correctly that Mrs. Fisher, as trustee, breached her fiduciary duty to Mrs. Greaves and that Mrs. Fisher did not enter

---

[32] *See* TEX. PROP. CODE § 114.081(a) ("A person who deals with a trustee in good faith and for fair value actually received by the trust is not liable to the trustee or the beneficiaries of the trust if the trustee has exceeded the trustee's authority in dealing with the person."); *see also id.* § 114.081(b) (implying that a beneficiary-purchaser has the duty "to inquire into the extent of the trustee's powers or the propriety of the exercise of those powers"); *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam) (including, in a non-trust case, the additional requirement that a bona fide purchaser take *without notice* of any third party claim or interest).

[33] *Madison*, 39 S.W.3d at 606.

[34] *Rogers v. McDorman*, 521 F.3d 381, 385–86 (5th Cir. 2008); *see* FED. R. CIV. P. 8(c).

[35] *Rogers*, 521 F.3d at 386 (internal quotation marks omitted).

[36] MDFI is a corporation wholly owned by Dan Fisher. Because the Appellees have not argued that as Dan Fisher's alter ego, MDFI lacked the knowledge that he clearly possessed, we do not consider that possibility.

into the contested transactions as executrix or as the holder of the special power of attorney. The court erred, however, in holding that proof of monetary damages was a prerequisite to rescinding the contested transactions. We therefore vacate the district court's judgment, and remand for entry of judgment voiding those impermissible self-dealing transactions.[37] The district court's judgment on remand shall be consistent with those portions of its amended findings of fact and conclusions of law that were not in error, i.e., those unrelated to a putative damages requirement.

VACATED and REMANDED WITH INSTRUCTIONS.

---

[37] As before us Mrs. Greaves seeks only to set aside the contested transactions, we need not and therefore do not reach the district court's grant of summary judgment rejecting her claims of fraud and civil conspiracy. Neither do we have occasion to determine whether Mrs. Greaves is entitled to an accounting, having explored that possibility with counsel at oral argument, where her counsel stated that Mrs. Greaves sought none. Specifically, we asked, "Wouldn't there be a very serious accounting if you — quote — turn the clock back and you undo these transactions, presumably your client would be entitled then to an accounting of everything that's happened since that improper transaction — prohibited transaction — was consummated?" Counsel responded that "there's a strong possibility that there will be additional proceedings that determine whether there were other unlawful transactions or a failure to give a proper accounting or any other [improper] things." Although we acknowledge the possibility of future proceedings for an *accounting*, in the absence of new allegations, Mrs. Greaves should not have an opportunity to re-seek monetary *damages* that she might have suffered while the Appellees were benefitting from the voidable transactions on which we rule today; the district court held that she proved none and that ruling was not at issue in this appeal.

16