No. 04-085

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2005 MT 172

GRAVEYARD CREEK RANCH, INC., a Montana
corporation; ELVAN PASHA, a/k/a PEE WEE PASHA,
NANCY PASHA, BRAD ADLER and AMY ADLER,

       Plaintiffs, Counter-Defendants and Cross-Appellants,

  v.

WILLIAM D. BELL, BELL CATTLE COMPANY, INC.,

       Defendants, Counter-Claimants and Appellants.

WILLIAM D. BELL, BELL CATTLE COMPANY, INC.,

       Third-Party Plaintiffs,

  v.

ALBERT R. BATTERMAN,

       Third-Party Defendant and Respondent.

APPEAL FROM:    The District Court of the Sixteenth Judicial District,
               In and For the County of Rosebud, Cause No. DV 2001-52,
               Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Loren J. O'Toole II, O'Toole & O'Toole, Plentywood, Montana

       For Respondents:

           James M. Ragain and John R. Christensen, Ragain, Christensen, Fulton
           and Filz, Billings, Montana

           Chris Mangen, Jr., Crowley, Haughey, Hanson, Toole & Dietrich,
           Billings, Montana

                        Submitted on Briefs:  May 11, 2005
                                  Decided:  July 12, 2005

Filed:

                             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Defendants William Bell and Bell Cattle Company, Inc., appeal from the judgment of the District Court. Plaintiffs cross-appeal from the judgment. We affirm the issue cross-appealed and dismiss the remaining issues because we determine Bell's appeal to be moot.

¶2    We address the following issues on appeal:

¶3    1. Whether Bell's appeal is moot because this Court cannot grant effective relief.

¶4    2. Whether the District Court erred in concluding the Pashas were liable for unlawful detainer and in trebling the jury's damage award.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Elvan and Nancy Pasha purchased Graveyard Creek Ranch in 1993. At the outset of this litigation, the couple were still living on the ranch, along with their daughter Amy Adler and son-in-law Brad Adler. In 2000 the Pashas[1] were in default on their real estate loan and in danger of losing the ranch to U.S. Bank. In March 2000 the ranch was appraised and valued at $950,000. After some negotiations with the Pashas over the loan's actual balance, U.S. Bank called the loan due at $500,000 and filed a foreclosure action.

¶6    Faced with the prospect of losing their ranch, the Pashas came into contact with Bell, an investor from California. With an impending date of foreclosure of September 15, 2000, the Pashas agreed to sell the ranch to Bell. Bell agreed to pay-off the loan balance with U.S. Bank through a loan made to him by Zion Bank, pay a $50,000 finders fee to the party who

---

[1]We will collectively refer to the Respondents, including Graveyard Creek Ranch, Inc., as "Pashas."

2

put Bell into contact with the Pashas, and pay $150,000 to the Pashas, including $100,000 through a contract for deed to be paid over thirty years. The Pashas would then reinvest the $150,000 into a new company to be formed by Bell, making them minority owners of that new company and releasing Bell from his payment obligations on the contract for deed. Also purportedly a part of the deal was an oral agreement that the Pashas would continue to live and work on the ranch as employees of Bell. Attorney and Third-Party Defendant Albert Batterman represented the Pashas in these negotiations. Because we determine below that Bell's appeal is moot, facts relevant to Batterman are irrelevant to this opinion.

¶7     In the actual agreement reached on September 15, 2000, and later closed on December 22, 2000, a mortgage for $100,000, due in only one year, was substituted for the contract for deed. Bell claims that he did not learn of this substitution until months after the closing, and that he would not have entered into the deal had he known. The Pashas claim that Bell suffered no harm from this substitution because, whether the instrument was a mortgage or a contract for deed, the Pashas were going to reinvest the proceeds into Bell's company anyway.

¶8     The substitution of a mortgage led to a break-down in relations between the parties. Although Bell created a company to run the ranch, "Bell Cattle Company, Inc.," the mortgage was never transferred into the company. Bell did seek to renegotiate the transfer, but offered terms much less favorable to the Pashas then the prior agreement had called for. Instead of a 21 percent share of the ranch, Bell offered the Pashas the equivalent of a 7.5 percent ownership share. Subsequently, the Pashas sued Bell in September 2001 for fraud

3

and breach of contract. Bell counterclaimed for fraud and unlawful detainer, contending that the Pashas continued to live on the ranch after ownership passed to him and after he had asked them to leave. The matter went to trial with the jury awarding the Pashas $400,000 in compensatory damages, and $100,000 in punitive damages. The jury also found for Bell on his unlawful detainer claim, awarding a total of $14,300, which the court then trebled to $42,900, pursuant to § 70-27-205(2), MCA.

¶9 Following the judgment, on January 8, 2004, Bell filed a notice of appeal but did not post a supersedeas bond or obtain a stay of execution of the Pashas' judgment. The Pashas proceeded to execute on the judgment and were in the process of planning a sheriff's sale on the ranch when Bell filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of California. Bell sought bankruptcy protection from both the Pashas and Zion Bank. In late December 2004, the bankruptcy court granted the Pashas' motion to lift the stay on their judgment lien as of February 2, 2005. Therefore, as of that date the Pashas were free to foreclose on the ranch. However, the bankruptcy court also allowed (but did not order) Bell to sell the ranch with the caveat that if the ranch were sold Bell must pay his creditors in full, including the Pashas and Zion Bank. Bell thenceforth sold the ranch and paid Zion Bank and the Pashas in full. Accordingly, the Pashas' mortgage on the ranch was released.

¶10 After the close of briefing in the appeal to this Court, Pashas moved that Bell's appeal be dismissed on account of waiver and mootness. We conclude below that Bell's appeal is moot. Therefore, we do not address the issue of waiver or the issues raised in Bell's appeal.

4

## DISCUSSION

### ISSUE ONE

¶11    *Whether Bell's appeal is moot because this Court cannot grant effective relief.*

¶12    As we have explained before, "In deciding whether a case is moot, we determine whether this Court can fashion effective relief." *Turner v. Mountain Eng'g & Constr., Inc.* (1996), 276 Mont. 55, 61, 915 P.2d 799, 803. *Turner* involved a  party, Turner, who foreclosed on mortgages on a property.  The district court held that his mortgages were superior to construction liens that other creditors (the defendants) held on the property. Pursuant to the court's judgment, the door was open for Turner to foreclose on the property. The lien creditors appealed to this Court, but failed to post a supersedeas bond.  Turner then foreclosed on the property at a sheriff's sale and bought the property himself.  *Turner*, 276 Mont. at 58, 915 P.2d at 801.

¶13    In determining mootness we distinguished *Turner* from *Martin Dev. Co. v. Keeney Constr. Co.* (1985), 216 Mont. 212, 703 P.2d 143.  In *Martin*, the appellant had not posted a supersedeas bond, and instead had paid the money judgment.  On appeal, the respondent argued that the payment rendered the appeal moot.  We disagreed, stating that the case involved "a simple money judgment . . . .  No property changed hands pursuant to the judgment nor are there third party interests involved.  There is no reason why this Court cannot grant effective relief." *Martin*,  216 Mont. at 220, 703 P.2d at 148.  These two elements,  (1) property changing hands and (2) third-party interests, were not present in *Martin*, so all that was necessary for effective relief was for the respondent to return the

5

money to the appellant. These two elements were, however, present in *Turner*. *Turner*, 276 Mont. at 63, 915 P.2d at 804. Turner had sold the property, through the sheriff's sale, to a third party (albeit Turner himself). Therefore, this Court had no authority to grant the lien creditors title to the property. Had we reversed the judgment of the district court we would have been powerless to grant effective relief.

¶14    Although the present case involves a money judgment, the money is merely part of a package deal involving the transfer of property. Therefore it is much closer to the situation in *Turner* than that in *Martin*. As in *Turner*, relevant property has changed hands and third-party interests, in fact multiple third-party interests, are involved. At the beginning of the litigation the Pashas owned the ranch subject to a $500,000 debt to U.S. Bank. They made a deal with Bell whereby he would pay-off their debt and they would receive an ownership interest in Bell's new company that would manage the ranch. Bell made this deal by incurring a $500,000 debt to Zion Bank. He fronted very little of his own money.

¶15    Were Bell still the owner of the ranch, this Court could merely reverse the $500,000 money judgment below and the Pashas would retain their ownership interest in the ranch company. However, now the situation is not so simple. Bell sold the ranch and paid-off his debt to Zion Bank. He also paid the money judgment whereupon his mortgage to the Pashas was released. Were we to reverse the judgment in Bell's favor he would stand to be considerably richer than he was when he entered into the original deal. This is because he has paid-off his debt to Zion Bank and invested very little of his own money into the original deal. The Pashas, on the other hand, would have no mortgage, no interest in Bell's company

(as the company has no ranch to manage and is therefore worthless), and no ranch. This would not be effective relief, but a $500,000 windfall in favor of Bell. In such circumstances we are compelled to conclude that the appeal is moot.

## ISSUE TWO

¶16   *Whether the District Court erred in concluding the Pashas were liable for unlawful detainer and in trebling the jury's damage award.*

¶17   We review a district court's conclusion of law to determine whether the court's interpretation of law is correct. *Marcher v. Bonzell*, 2004 MT 294, ¶ 13, 323 Mont. 364, ¶ 13, 104 P.3d 436, ¶ 13. The Pashas cross-appeal from the judgment finding them liable for unlawful detainer. Bell argues that the Pashas did not object to this claim below and that they are therefore barred from appealing the District Court's judgment. In response, the Pashas correctly point out that they did raise an evidentiary objection to the District Court's jury instruction on unlawful detainer. On appeal the Pashas argue that they were not tenants at will (which they contend they would need to be in order for Bell to claim unlawful detainer), and that Bell did not give proper notice in seeking to evict them. The Pashas, however, did not argue these legal theories in their objection to the jury instruction. Because this theory on appeal is different from that advanced below we decline to address this issue. *See Ellenburg v. Chase*, 2004 MT 66, ¶ 18, 320 Mont. 315, ¶ 18, 87 P.3d 473, ¶ 18 ("This Court has repeatedly held that a party may not change its theory on appeal from the one advanced in the district court.").

7

¶18     At trial, the jury found the Pashas liable for a total of $14,300.  This included damages of $4,200 against both Elvan and Nancy Pasha, $2,800 against both Amy and Brad Alder (the daughter and son-in-law of the Pashas), and $300 against Graveyard Creek Ranch, Inc.  Pursuant to § 70-27-205(2), MCA, Bell moved to treble these damages, and the court entered judgment accordingly.  That statute states that once a jury renders its verdict for unlawful detainer, "[T]he judgment *shall* be rendered against the defendant, guilty of the . . . unlawful detainer, *for three times the amount* of the damages thus assessed and of the rent found due."  (Emphasis added.)  "This court has long regarded the provisions of [§ 70-27-205(2), MCA] as mandatory and as imposing the duty on the trial court to treble the amount of damages assessed and the amount of the rent found due."  *Needham v. Justice Court* (1946), 119 Mont. 89, 96, 171 P.2d 351, 354.  The word "shall" leaves the trial court no leeway to decline to treble an award in an unlawful detainer claim, and leaves us no option but to affirm such an award.

¶19     Nevertheless, the Pashas, who did timely object to the treble damage award, argue that *Montana Williams Double Diamond Corp. v. Hill* (1978), 175 Mont. 248, 573 P.2d 649, demands a different result.  In that case, we reversed the trebling of an unlawful detainer award concerning rent due when the tenants continued to occupy a building after receiving an eviction notice.  *Montana Williams*, 175 Mont. at 250-52, 573 P.2d at 651-52. We agree with the District Court that *Montana Williams* is distinguishable from this case.  *Montana Williams* concerned rent due, not damages, as is the case here.  *Montana Williams*, 175 Mont. at 254-55, 573 P.2d at 653.  As the District Court stated, there was no lease agreement

8

and no "rent due" finding by the jury.  Instead, the jury found the amount of money that would "reasonably compensate" Bell.  This language pertains to damages, not rent due. Therefore, we are bound by the mandatory language of the statute and affirm the District Court's decision to treble the damages.

## CONCLUSION

¶20     We conclude that Bell's appeal is moot, and we affirm the judgment of the District Court trebling the award for unlawful detainer.


/S/ W. WILLIAM LEAPHART


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS