Daral R. SMITH, Appellant,

v.

WELLS FARGO BANK, Appellee.

No. 09–CV–77.

District of Columbia Court of Appeals.

Argued Jan. 27, 2010.
Decided March 25, 2010.

Marc H. Sliffman for appellant.

Jodie E. Buchman, with whom Richard M. Kremen, Baltimore, MD, was on the brief, for appellee.

Before THOMPSON and OBERLY, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

In 2005, Mary Smith, asserting power of attorney for her father, Willie Smith, conveyed to herself a parcel of real property that he owned. In 2006, Mary Smith executed a deed of trust conveying an interest in the property to a mortgage lender. Subsequently, after Mary Smith defaulted on the mortgage loan, Wells Fargo Bank, which had come to hold the note secured by the deed of trust, foreclosed on the property and eventually purchased it at a foreclosure sale. Appellant, who is Mary Smith's brother, and several of their siblings sued both Mary Smith and Wells Fargo in a quiet title action, alleging that the conveyances to and from Mary Smith (and any conveyances following from them) were invalid because the power-of-attorney instrument did not authorize Mary Smith to convey the property to herself and because, in any event, the instrument was a forgery. The trial court granted summary judgment in favor of Wells Fargo, (1) having stricken the affidavits that plaintiffs submitted to oppose summary judgment on the forgery issue, and (2) finding that Wells Fargo was a bona fide purchaser for value without notice of any defect in title (a "BFP"). This appeal followed.

We affirm as to the trial court's ruling that Wells Fargo was a BFP, as no evidence was presented showing that Wells Fargo was on inquiry notice of any irregularity in Mary Smith's conveyances of the property (and, as we also discuss, unless the power-of-attorney instrument was a forgery, we are satisfied that it gave Mary Smith apparent authority to convey the property as she did). We conclude, however, that the trial court erred in striking the affidavits that plaintiffs submitted in support of their forgery claim, and likewise erred in granting summary judgment, because the affidavits raised a material factual issue as to whether there was a forgery affecting the chain of title. We therefore reverse and remand for trial on the forgery issue.

**I.**

Willie Smith was the fee simple owner of real property located at 3061 Vista Street, N.E. ("the property"). The summary-judgment record contains a copy of a "Durable Power of Attorney" ("the POA"), purportedly executed by Willie Smith on November 4, 2005, that named "my daughter, Mary A. Smith ... as my Attorney in Fact" and that bore a legend (required by D.C.Code § 42–101(a) (2001) for a power of attorney to convey land) authorizing Mary Smith to "sell, lease, grant, encumber, release or otherwise convey any interest in my real property and to execute deeds and all other instruments on my behalf." The POA was notarized by notary public Marilyn Beckwith.

On November 15, 2005, Mary Smith executed a deed transferring the property from "Mary Smith, Agent for Willie Smith" to herself for the consideration of ten dollars. One day later, Willie Smith died intestate. He was survived by eight children: Daral Smith, Jennifer Hebron, Nathaniel Smith, Rickey Smith, William

Smith, and Walter Smith (together, the plaintiffs), Michael Smith, and Mary Smith.

After Mary Smith applied for a loan to refinance the property on November 3, 2006, the lender caused a title search to be done regarding the property. The search revealed both the POA and the November 15, 2005 deed, which had been recorded simultaneously in the District of Columbia land records on December 12, 2005. Mary Smith obtained a mortgage loan on the property in the amount of $220,000 upon execution of a deed of trust in favor of trustees for Option One Mortgage Corporation. The deed of trust was recorded in the land records on November 14, 2006. At some point thereafter, Wells Fargo came to be the holder of the note as trustee for Option One Mortgage Loan Trust 2007–1 Asset–Backed Certificates, Series 2007–1.[1]

On June 8, 2007, plaintiffs filed an action in the Superior Court to quiet title to the property, naming Wells Fargo ("as trustee for Option One Mortgage Loan") and Mary Smith as defendants. In their complaint, plaintiffs alleged that the POA did not grant Mary Smith the power to convey the property as a gift to herself and that the signature on the POA was not that of Willie Smith. They sought a declaration that the deed recorded on December 12, 2005, and the deed of trust recorded on November 14, 2006, were invalid, null and void, and that the estate of Willie Smith is the fee simple owner of the property. The complaint also sought an award of damages against Mary Smith and "any other relief the court deemed proper," but did not specifically seek monetary damages

from Wells Fargo. A week after the complaint was filed, plaintiff/appellant Daral Smith was appointed personal representative of the estate of Willie Smith, which was opened for probate in the Superior Court.

Defendant/appellee Wells Fargo filed its motion for summary judgment on February 1, 2008. In support of the motion, Wells Fargo attached an affidavit from notary Beckwith, who averred that she notarized the POA after Willie Smith, accompanied by Mary Smith, came to Beckwith's office and Willie Smith presented photo identification that enabled Beckwith to verify his identity. Beckwith further stated that Willie Smith signed the POA voluntarily and did not appear to be under any duress.

Plaintiffs opposed the motion for summary judgment and attached to their opposition, *inter alia*, affidavits of Jennifer Hebron and Daral Smith. Hebron stated in her affidavit that she saw her father's signature many times, including during the last months of his life, was "very familiar" with his signature and handwriting, and "[b]ased upon my experience and knowledge of my father's handwriting, I do not believe that he executed the power of attorney." Hebron also stated that her father, who was 90 years old when he died from pancreatic cancer on November 16, 2005, was "extremely weak" when she saw him on November 4, 2005 and "rarely left his bed." She stated that, by November 4, 2005, her father's "mental state had deteriorated significantly and he was no longer able to understand even simple financial transactions" and "[h]is weak condition

---

1. Wells Fargo's status as trustee for the note holder is disclosed on a notice announcing a foreclosure sale scheduled for June 14, 2007. It appears that this announced sale did not go forward, and that it was not until December 2008, i.e., after judgment in this case, that the property was sold, and not until January 2009 that legal title to the property was deeded to Wells Fargo (as trustee for Option One Mortgage Loan Trust 2007–1 Asset–Backed Certificates, Series 2007–1).

and mental state would have been obvious to anyone seeing him sign his name." Daral Smith's affidavit contained similar statements about Willie Smith's weakened condition in November 2005.

In response, Wells Fargo moved to strike the affidavits that plaintiffs had submitted. In an order dated May 13, 2008, the trial court granted Wells Fargo's motion to strike, denied plaintiffs' motion to strike Beckwith's affidavit,[2] and granted Wells Fargo's motion for summary judgment. The court found that Wells Fargo "is a bona fide purchaser for value," explaining that:

> In preparation for closing on the loan, Wells Fargo, via a title company, undertook an investigation of the title history of the property. There was nothing untoward discovered during the title history investigation. Further, there was nothing about the nature of the conveyance of the property from defendant Mary A. Smith, as the agent for Willie Smith, to defendant Mary A. Smith that on its face, was sufficient to put Wells Fargo on notice of any potential deficiency in the title, i.e., there was nothing within the title history that would have put Wells Fargo on notice of an "outstanding claim."

On June 3, 2008, the court denied plaintiffs' motion for reconsideration of those rulings. Daral Smith, in his capacity as personal representative of the Estate of Willie Smith, filed a notice of appeal on January 16, 2009 (after the court entered judgment against remaining defendant Mary Smith on July 25, 2008).

The parties' Appendix contains a November 7, 2008 notice of a foreclosure sale of the property scheduled for December 11, 2008, and a substitute trustees deed showing a January 9, 2009 conveyance of the property to Wells Fargo as trustee for Option One Mortgage Loan Trust 2007–1 Asset–Backed Certificates, Series 2007–1.[3] Neither party, however, has moved to supplement the record to include these post-summary-judgment documents.

## II.

Appellant contends that the trial court erred in granting summary judgment to Wells Fargo, asserting that the record establishes a genuine issue of material fact as to whether Wells Fargo was on inquiry notice of a defect in title and that the court abused its discretion in striking plaintiffs' evidence that the signature on the POA was a forgery. Wells Fargo urges us to affirm the trial court's ruling, but, in the alternative, urges us to dismiss the appeal as moot inasmuch as the property was sold in December 2008, the court may not order a reconveyance of the property since its beneficial owner is not a party to these proceedings, and plaintiffs sought damages only against Mary Smith, not against Wells Fargo. We begin our analysis with the mootness issue.

## A.

■ ■ "In deciding whether a case is moot, we determine whether this [c]ourt can fashion effective relief." *Thorn v. Walker,* 912 A.2d 1192, 1195 (D.C.2006)

---

**2.** Plaintiffs had moved to strike the Beckwith affidavit as a sanction for Wells Fargo's asserted failure to respond to interrogatories asking it to identify Beckwith's address and telephone number.

**3.** Apparently, Wells Fargo both initiated the foreclosure action as holder of the note, *cf.*

*United States v. Thornburg,* 82 F.3d 886, 892 (9th Cir.1996) (holding that the assignment of a promissory note assigns the right to foreclose on the property securing the note, even if the mortgage documents have not been assigned), and purchased the property at the foreclosure sale.

(quoting *Graveyard Creek Ranch, Inc. v. Bell,* 327 Mont. 491, 116 P.3d 779, 781 (2005)). "[W]hile an appeal is pending, an event that renders relief impossible or unnecessary . . . renders that appeal moot." *Id.* (citation and internal quotation marks omitted). We have observed that, in appeals involving title to real property, "the sale of property generally precludes effective relief" unless there is a claim for the recovery of money damages.[4] *Id.* at 1195, 1196. That is because, where the "property has been sold and [defendant] no longer has any right to possess it," it is not possible for the court to return the property to the plaintiff. *Id.* at 1197; *see also Evans v. Family Sav. & Loan Ass'n of Va.,* 481 A.2d 1309, 1310 (D.C.1984) (per curiam) (holding that appeal was moot where property in dispute had been sold at a foreclosure sale to a third party who was not before the court, because the status quo could not be restored and thus the court could not grant effective relief).[5]

■ The situation before us is unlike the ones we described in *Thorn* and *Evans,* and thus the rationale of those cases is inapposite here. The grantee under the January 9, 2009 conveyance that Wells Fargo claims moots this appeal was Wells Fargo itself (as trustee for Option One Mortgage Loan Trust 2007–1 Asset–Backed Certificates, Series 2007–1). Thus, even though plaintiffs sued Wells Fargo "as trustee for Option One Mortgage Loan" (a somewhat different name), and even though it appears that Wells Fargo has changed roles since the filing of the Complaint[6] and the entry of judgment, we cannot conclude that, to grant relief, the court would be required to enjoin conduct by a person not before the court. We conclude, therefore, that this appeal is not moot, and thus we proceed to consider the parties' arguments on the merits.[7]

4. One situation in which we have held that a (claimed) sale of the property that is the subject of an appeal does not moot the appeal is where the parties have not "supplement[ed] the record on appeal to reflect the alleged sale of the premises." *Id.* at 1196 (quoting *Wright v. Thomas D. Walsh, Inc.,* 856 A.2d 1108, 1110 (D.C.2004), and *Brown v. Hornstein,* 669 A.2d 139, 141 (D.C.1996)). That precisely describes the situation here (even though no one disputes that the property was sold), and thus *Thorn* and *Brown* provide a basis for us to hold that this case is not moot. As discussed in the text *infra,* however, in reaching this conclusion, we rely primarily on what we think is a more compelling fact of this case.

5. As we explained in *Evans,* "where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined, the court may by mandatory injunction restore the *status quo* "; but where the property has been sold to a non-party, "[e]ven if we were to reverse the order denying the injunction, neither this court nor the trial court could set aside the foreclosure sale because the purchaser is not a party to the[ ] proceedings." 481 A.2d at 1310 (citation and internal quotation marks omitted).

6. See notes 1 and 3, *supra.*

7. Wells Fargo also argues—apparently for the first time on appeal—that plaintiffs lacked standing to sue in their individual capacities. It is undisputed, however, that Daral Smith has authority to maintain a suit as the personal representative of the estate of Willie Smith. *See* D.C.Code § 20–701(c) (2001) ("[A] personal representative of a decedent domiciled in the District of Columbia at his death has the same standing to sue and be sued in the courts of this and any jurisdiction as the decedent had immediately prior to death."); *Robinson v. Samuel C. Boyd & Son, Inc.,* 822 A.2d 1093, 1103 (D.C.2003) (personal representative of estate, but not heir, had right to sue third party for wrong to the estate). Although Daral Smith had not yet been appointed personal representative at the time the quiet-title action was filed, the complaint asserted that he had petitioned for appointment and that he brought suit both in his personal capacity and for the benefit of the estate. His subsequent appointment, a week after the complaint was filed, cured any issue with his standing. *Cf. Duckett v. District of Columbia,* 654 A.2d 1288, 1291 (D.C.1995) (holding that trial court erred in failing to provide the plaintiff,

## B.

■ The trial court's analysis and appellant's argument focus on whether Wells Fargo is a BFP—i.e., one who "acquire[d] ... interest in a property for valuable consideration and without notice of any outstanding claims which are held against the property by third parties," *Clay Props., Inc. v. Wash. Post Co.*, 604 A.2d 890, 894 (D.C.1992),[8] and thus is protected from outstanding interests in the property of which it had no notice.[9] Our analysis, however, must be somewhat broader. BFP status, though affording some protection, would not protect Wells Fargo if the conveyances underlying Wells Fargo's interest in the property were void ab initio. *See, e.g., SEC v. Madison Real Estate Group, LLC*, 647 F.Supp.2d 1271, 1279 (D.Utah 2009) (explaining that while a voidable deed is "unassailable in the hands of a bona fide purchaser," the "protections afforded to bona fide purchasers do not apply to deeds that are void") (internal quotation marks and alterations omitted).[10] The underlying deed to Mary Smith and the deed of trust in favor of her mortgage lender would be void if the POA was a forgery,[11] or if the POA was valid but Mary Smith exceeded the authority it gave

who had sued in her individual capacity but was making a good-faith attempt to become the personal representative, with an opportunity to substitute herself as personal representative as the real party in interest); *see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203–04 (Fed.Cir.2005) (explaining that defect in standing can be cured before judgment); *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 701 N.E.2d 1002, 1008 (1998) (noting that, unlike lack of subject-matter jurisdiction, the affirmative defense of lack of standing can be waived).

8. Appellant does not dispute that appellee, Wells Fargo, acquired an interest in the property for valuable consideration. Thus, the only question here is whether Wells Fargo had notice of outstanding claims when it first acquired an interest in the property.

9. Our review of this issue is *de novo. See Assocs. Fin. Servs. of Am., Inc. v. District of Columbia*, 689 A.2d 1217, 1220 (D.C.1997).

10. Courts have held, for example, that BFP status protects a lender from a claim that a property owner was suffering from a deteriorated mental state or was under undue influence when he executed an instrument, *see, e.g., First Interstate Bank of Sheridan v. First Wyo. Bank, N.A.*, 762 P.2d 379, 382 (Wyo. 1988) (explaining that "a contract made prior to an adjudication of incapacity and appointment of a guardian, but while the person is under mental disability, is only voidable," and holding that bank was protected from such a claim as a bona fide purchaser); and from a claim that a transfer was from a fiduciary to its own account. *See, e.g., Seattle–First Nat'l Bank v. Randall*, 532 F.2d 1291, 1297 (9th Cir.1976) (explaining that "knowledge of the mere existence of [a fiduciary] relationship does not charge the purchaser with notice so as to disqualify it from becoming a bona fide purchaser. Neither does the fact that the security is transferred to the individual account of the fiduciary, by itself, constitute notice"; but holding that bank could not claim BFP status because it actually knew that the transaction was solely "for the individual benefit of [the fiduciary]"); *see also Fisher v. Miocene Oil & Gas Ltd.*, 335 Fed. Appx. 483, 487 (5th Cir.2009) ("A fiduciary's self-dealing transaction is not void per se, but is instead voidable. . . ."); *Walker v. McIntire*, 41 App. D.C. 380, 383 (D.C.Cir.1914) ("[A] trustee cannot purchase or deal in the trust property for his own benefit or on his own behalf. . . . But such a purchase is not absolutely void. It is only voidable. . . .").

11. *See McNairy v. Baxter (In re Baxter)*, 320 B.R. 30, 39 (Bankr.D.D.C.2004) ("[I]f the Limited Power of Attorney was a forgery, the deed of trust executed pursuant to the Limited Power of Attorney is ineffective."); *see also M.M. & G., Inc., v. Jackson*, 612 A.2d 186, 191 (D.C.1992) ("It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance."); *276 Skillman St. LLC v. Ralph Constr.*, 18 Misc.3d 1136, 859 N.Y.S.2d 899 (Sup.Ct.2008) ("[O]nce a property has been obtained by way of a forged deed, any subsequent purchaser from the al-

her as attorney-in-fact when she conveyed the property to herself.[12] As to the first of these possibilities, appellant urges that the POA was indeed forged and that the trial court erred in excluding the evidence of forgery and in granting summary judgment to Wells Fargo, an issue we discuss *infra.* As to whether Mary Smith exceeded her authority under the POA, even if the POA was valid, the answer depends on whether the terms of the POA gave her either actual or apparent authority to transfer the property to herself.[13]

■ Appellant contends that the terms of the POA did not give Mary Smith actual authority to convey the property herself for only nominal consideration. He correctly notes that the weight of authority is that a general power of attorney authoriz-ing an agent to convey property does not authorize an agent to make a gift of the property or to transfer it without obtaining consideration for the principal. *See, e.g., King v. Bankerd,* 303 Md. 98, 492 A.2d 608, 612 (1985) (citing cases across jurisdictions holding that a general power of attorney that authorizes an agent to sell and convey property does not authorize the agent to make a gift of the property). Thus, appellant asserts, neither the power-to-convey-real-property language set out in the legend of the POA nor the general language set out in paragraph four of the POA[14] authorized Mary Smith to gift the property to herself. Nor, appellant asserts, did paragraph seven of the POA authorize such a gift. Paragraph seven authorizes the attorney-in-fact to "make

leged grantee, even for value and without notice, will not be protected, and such transfer is also a nullity."); *Cruz v. Cruz,* 37 A.D.3d 754, 832 N.Y.S.2d 217, 218 (2007) ("A deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid.").

12. *See, e.g., James v. James,* 843 So.2d 304, 308 (Fla.Dist.Ct.App.2003) (noting that authority under a power of attorney is to be "strictly constructed," and cancelling deed because attorney-in-fact exceeded his authority under a power of attorney from his father when he made a gift of the property).

13. "[A]pparent authority arises when a principal places an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold." *Stieger v. Chevy Chase Sav. Bank,* 666 A.2d 479, 482 (D.C.1995) (citations and internal quotation marks omitted). It may arise "when the principal places the agent in such a position as to mislead third persons into believing that the agent is clothed with authority which in fact he does not possess." *Id.; cf. Hindman v. Moore,* No. E2005–01287–COA–R3–CV, 2006 WL 1408394, 2006 Tenn.App. LEXIS 339 (Tenn.Ct.App. May 23, 2006) (holding that even though son exceeded his authority under a power of attorney from his mother, he acted within the scope of his apparent authority when he signed deed of trust, and thus mother's estate was bound); *Radison Props., Inc. v. Flamingo Groves, Inc.,* 767 So.2d 587, 590 (Fla.Dist.Ct.App. 4th Dist.2000) (reversing judgment granting foreclosure because purported grantor of property lacked actual authority to execute deed and the record also did "not support the trial court's finding that [he] had apparent authority to encumber the property by the mortgage"); *Henry v. Auchincloss, Parker & Redpath,* 193 F.Supp. 413, 414–15 (D.D.C.1961) ("Where one ... has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far .... Under such circumstances the presence or absence of authority in point of fact, is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences.") (quoting *Bronson's Ex'r v. Chappell,* 79 U.S. (12 Wall.) 681, 683, 20 L.Ed. 436 (1870)).

14. Paragraph four of the POA vests the "Attorney in Fact (hereinafter called my Agent)" with "full power and authority ... for me and in my name" to "sell, transfer, convey, lease, grant, encumber and release any interest in my real property ... located at 3061 Vista Street, N.E."

gifts of my assets as my Agent may deem desirable so as to utilize the annual gift tax exclusion or in order to minimize death taxes." Appellant emphasizes that there was no evidence that Mary Smith transferred the property for either of those purposes and, in any event, "the value of the estate of Willie Smith was far below any threshold for estate or gift taxes."[15]

█ We can assume without deciding that appellant is correct that the general power-to-convey provisions of the POA did not authorize Mary Smith to convey the property to herself for ten dollars. We are satisfied, however, that paragraph seven gave Mary Smith at least apparent authority to convey the property to herself. Nothing in the POA disclosed that Willie Smith had a small estate or that the property was (as appellant's brief now suggests) Willie Smith's only substantial asset. *Cf. Parton v. Robinson*, 574 S.W.2d 679, 682 (Ky.Ct.App.1978) ("[A] third party dealing with the attorney in fact is only required to look to the language of the power of attorney to determine the extent of the power."). Even if Willie Smith had no need to avail himself of the annual gift tax exclusion or to minimize death taxes, his execution of the POA authorizing gifts for these purposes clothed his attorney-in-fact with apparent authority to make gifts that could appear to an innocent third party to be for such a purpose. Further, the fact that Mary Smith deeded the property to herself—Willie Smith's daughter—did not show that the transfer was not for one of the purposes authorized by paragraph seven of the POA. To the contrary, *inter vivos* gifts to adult children are a familiar estate and tax planning vehicle.[16]

█ Even if the POA gave Mary Smith apparent authority to gift the property to herself, Wells Fargo may not rest on that apparent authority if it was on inquiry notice that Mary Smith did not actually have the authority the POA appeared to give her—i.e., if Wells Fargo was "aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances." *Clay Props.*, 604 A.2d at 895

**15.** We note that under D.C.Code § 47–3705(a)(2) (2001), no estate tax return is required "if the [decedent's] gross estate does not exceed $1 million."

**16.** *See Peterson v. Wallach*, 314 Ill.App.3d 823, 248 Ill.Dec. 38, 733 N.E.2d 713, 714–15 (2000) (noting that estate planning recommendation was that mother make *inter vivos* gifts to her daughter to "minimize death taxes on her estate when she passed away and to maximize the value of assets that [the daughter] would receive upon [the mother's] death"); *In re Marks' Estate*, 4 Pa. Dist. & Cnty. 4th 597, 599, 602 (Pa.Orph.1989) (explaining court's reasoning that "the gifts proposed for estate planning purposes should [have been] limited to the [incompetent's] intestate heirs, or the natural objects of [his] bounty" since "the purpose of estate planning is to save death taxes on behalf of the beneficiaries of the estate" and "it is reasonable to make these individuals the present beneficiaries of gifts in order to protect their future inheritance"); *In re Ebelhare Estate*, 40 Pa. Dist. & Cnty.3d 34, 36 (Pa.Orph.1986) (noting that decedent wanted to give his son his farm to minimize his death-tax liability); *In re Trott*, 118 N.J.Super. 436, 288 A.2d 303, 307 (Ch. Div.1972) (noting that heirs at law constituted the "natural objects of the bounty" of the incompetent, that gifts to them during the incompetent's lifetime "benefit and advantage the estate ... by a reduction of death taxes," and that there was no substantial evidence that the incompetent, "as a reasonably prudent person, would, if competent, not make the gifts proposed in order to effectuate a saving of death taxes"); *see also In re Estate of Ferrara*, 7 N.Y.3d 244, 819 N.Y.S.2d 215, 852 N.E.2d 138, 143 (2006) (noting that under a state law empowering individuals to appoint an attorney-in-fact to make annual gifts consistent with financial, estate, or tax planning objectives, the "attorney-in-fact may make gifts to himself if he qualifies as a beneficiary").

("The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.").[17] This is the BFP issue, to which we now turn.

Appellant contends that Mary Smith's conveyance of the property to herself for only nominal consideration did raise a red flag and that, upon inquiry, Wells Fargo could have discovered that it was at best questionable whether Willie Smith had empowered Mary Smith to convey the property. Accordingly, he argues, it was error for the trial court to find that Wells Fargo was a BFP and on that basis to grant summary judgment in Wells Fargo's favor. But appellant has cited no facts or precedents that persuade us that (or that create an issue as to whether) Wells Fargo "had any reason to question the validity of [the POA] or the competency of [Willie Smith] to execute same." *Parton*, 574 S.W.2d at 682 ("[A] good faith purchaser ... [will] not be bound to consult an attorney, or to look for subtle rules of law, or to make a hypercritical analysis of the language of the power, but must be protected in his purchase made in good faith.") (citations and internal quotation marks omitted); *Spence v. Spence*, 368 S.C. 106, 628 S.E.2d 869, 876 (2006) (discussing the "range of inquiry" required for BFP status and explaining that there must be "such a connection between the facts disclosed and the further facts to be discovered, *that the former could justly be viewed as furnishing a clue to the latter*") (italics added and citation omitted). Nor has appellant pointed to anything in the record that suggests that Wells Fargo had an obligation to be skeptical about or to inquire into whether the conveyance was for a purpose authorized by paragraph seven of the POA. For example, although the deed conveying the property to Mary Smith disclosed that Willie Smith was the "Surviving Tenant by the Entirety of Carrie Lee Smith," nothing in the recorded instruments disclosed that Mary Smith had siblings who might have been additional objects of Willie Smith's bounty or have had an expectancy interest in the property. And there was no evidence that the Option One Mortgage had financial or family information about Willie Smith and his other children (and appellant has cited no basis for charging Wells Fargo with knowledge of such information even if it were contained in the lender's files). *Cf. SEC*, 647 F.Supp.2d at 1281 ("Merely showing information from a loan broker or an original lender's file is insufficient to prove that a ... bona fide purchaser for value took the property with knowledge about such information.").

Appellant also argues that the irregular form of Mary Smith's execution of the deed put Wells Fargo on inquiry notice. He cites the requirement of D.C.Code § 42–101(b) (2001) that "[a] person with ... power of attorney executing a deed for another shall sign and acknowledge the deed as attorney-in-fact." He contends that Mary Smith's execution of the deed by signing "Mary A. Smith as Agent for

---

**17.** Even if an agent has apparent authority to sign a deed, if "the grantee has knowledge of facts that would lead a reasonable, prudent purchaser to make inquiries as to the circumstances of the transaction, a purchaser's title cannot be protected since he or she has previous notice of the prior fraud by the immediate seller." *276 Skillman St. LLC*, 859 N.Y.S.2d 899; *see also Ross v. Kenwood Inv. Co.*, 73 Wash. 131, 131 P. 649, 652–53 (1913) (holding that attorney-in-fact's apparent authority under power of attorney "was in law her real authority" so far as appellants' rights were concerned, "unless, at the time of acquiring their respective interests in the lots, they had notice of some facts suggesting inquiry upon their part that [the attorney-in-fact] did not possess all of the powers evidenced by [the power of attorney] language, or that the power had been exercised in fraud of respondent's rights").

Willie Smith," instead of "Willie Smith by his attorney-in-fact Mary A. Smith" as prescribed by the statute, either constituted or put Wells Fargo on inquiry notice of a defect in title. We disagree. For one thing, one of the introductory paragraphs of the POA specifies that the "Attorney in Fact" is "hereinafter called my Agent." Thus, a title searcher examining the POA and the deed together would not have perceived any inconsistency between the POA and Mary Smith's execution of the deed as "Agent for Willie Smith." In addition, even if the form of signature prescribed by section 42–101(b) was a formal requisite, any defect in the deed as a result of Mary Smith's non-conforming manner of execution was overcome by the time Wells Fargo came to be the holder of the note secured by the property. Under D.C.Code § 42–403, "[a]ny instrument recorded in the Office of the Recorder of Deeds on or after April 27, 1994, shall be effective notwithstanding the existence of 1 or more of the failures in the formal requi-

sites listed in § 42–404 (which includes 'a defective or improper acknowledgment,' *see* D.C.Code § 42–404(a)(1)), unless the failure is challenged in a judicial proceeding commenced within 6 months after the instrument is recorded." The deed executed by Mary Smith on November 15, 2005, was recorded on December 12, 2005. There was no challenge to any defect in the acknowledgment within six months after that recordation date. Thus, when Wells Fargo first acquired an interest in the property on or after December 2006, even if a title search revealed a defect in the acknowledgment, as a matter of law, that defect did not call into question the ineffectiveness of the deed.[18]

For the foregoing reasons, we agree with the trial court that Wells Fargo was protected as a BFP against the alleged defects in title discussed above.[19]

### C.

■ ■ The trial court's grant of summary judgment to Wells Fargo came on

---

**18.** Appellant also challenges the trial court's ruling striking the expert-witness affidavit of Mark Hessel, which plaintiffs submitted in support of their opposition to Wells Fargo's summary-judgment motion. In light of Wells Fargo's representation that, during the discovery period, plaintiffs failed to identify Hessel in response to Wells Fargo's interrogatories asking for the identification of plaintiffs' experts, we can find no abuse of discretion in the trial court's striking of the affidavit. The trial court's ruling was also justified on the ground that the affidavit contained legal conclusions (regarding whether Wells Fargo was a BFP, and about application of the law governing powers of attorney) and thus exceeded the permissible scope of expert testimony. *See Steele v. D.C. Tiger Mrkt.*, 854 A.2d 175, 183–84 (D.C.2004) (citation omitted).

**19.** Of course, by the time the property was sold and deeded to Wells Fargo as trustee for Option One Mortgage Loan Trust 2007–1 Asset–Backed Certificates, Series 2007–1, see note 1, *supra*, Wells Fargo was on notice of plaintiffs' claims. But our analysis above is

based on Wells Fargo's having earlier acquired an interest in the property as security for the note that it held as trustee. *See Williams v. Chevy Chase Bank (In re Williams)*, 277 B.R. 78, 82–83 (Bankr.D.Md. 2002) ("It is the note holder, not the deed of trust trustee ... that holds the beneficial interest in the real property."); *see also Carpenter v. Longan*, 83 U.S. (16 Wall.) 271, 275, 21 L.Ed. 313 (1873) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."); *Le Brun v. Prosise*, 197 Md. 466, 79 A.2d 543, 548 (1951) (citing *Carpenter*, 83 U.S. at 274, for the rule that "[a]n assignment of the note carries the mortgage with it"); *In re Vargas*, 396 B.R. 511, 516–517 (Bankr.C.D.Cal.2008) (citing *Carpenter* as authority that it "has long been the law throughout the United States" that "when a note secured by a mortgage is transferred, transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter") (internal quotation marks omitted).

the heels of the court's ruling striking the affidavits of Jennifer Hebron and Daral Smith that plaintiffs submitted in opposition to the summary-judgment motion, and the court's denial of plaintiffs' motion to strike the Beckwith affidavit. These affidavits were relevant to plaintiffs' claim that the POA was a forgery, as the statements in each addressed the likelihood that Willie Smith executed the POA. As explained above, if the POA was a forgery, it rendered ineffectual the deed by which Mary Smith conveyed the property to herself and the deed of trust that she executed, which is the basis of Wells Fargo's interest in the property., because even a bona fide purchaser cannot acquire a property right by means of a forged instrument relating to the property. *In re Baxter*, 320 B.R. at 39. Appellant contends that the court erred in striking the Hebron and Daral Smith affidavits and that only upon this error was the court able to grant summary judgment for Wells Fargo.

■ Wells Fargo moved to strike the Hebron and Daral Smith affidavits on the ground that the affidavits were not based on personal knowledge about whether Willie Smith signed the POA, as neither Hebron nor Daral Smith claimed to have been present when the POA was signed.[20] Hebron stated in her affidavit, however, that she was familiar with her father's signature, including his signature during the last years of his life, and that on that basis she did not believe the signature on the POA was his. Her affidavit was competent evidence, and the court erred in striking it. *See Rogers v. Ritter*, 79 U.S. (12 Wall.) 317, 322, 20 L.Ed. 417 (1870) (stating that it is well-settled that a person who

has seen someone write his or her name even once is qualified to testify to the genuineness of a controverted signature); *Bates v. Hogg*, 199 Ky. 465, 251 S.W. 620, 622 (1923) (stating that the personal knowledge a witness must have to prove the handwriting of a person includes prior experiences seeing the person write); *Berg v. Peterson*, 49 Minn. 420, 52 N.W. 37, 37 (1892) (noting that personal knowledge of a person's handwriting can be acquired by having seen the person write); *Storm v. Hansen*, 41 N.J.Super. 249, 124 A.2d 601, 604 (App.Div.1956) ("[T]o qualify to identify handwriting or a signature, a witness must have seen the person write, or by correspondence and other business transactions with him obtained personal knowledge of the party's handwriting.").

■ Daral Smith's affidavit does not specifically address the signature of Willie Smith but sets out information, based on Daral Smith's personal observations, about Willie Smith's weakened, bedridden condition and deteriorated mental state during the month of his death. The affidavit raises at least an issue as to whether the individual who (according to the Beckwith affidavit) went to the notary's office and executed the POA twelve days before Willie Smith's death was in fact Willie Smith. *Cf. Succession of Gabisso*, 122 La. 824, 48 So. 277, 279 (1909) (citing, as additional basis for upholding trial-court judgment that contract allegedly written and delivered by decedent was a forgery, the fact that deceased "was in feeble health and physically unable").[21] The Daral Smith affidavit, and the similar sworn statements in the Hebron affidavit, were competent

---

**20.** *See* Super. Ct. Civ. R. 56(e) (providing that affidavits in support of summary judgment pleadings "shall be made on personal knowledge").

**21.** *See also LaPrade v. Rosinsky*, 882 A.2d 192, 195 (D.C.2005) (upholding grant of summary judgment that was based on trial court's crediting testimony that, despite notary's certification, party certified to have executed deed did not actually do so).

evidence on the issue of forgery. *See Wright*, 198 So. at 90 ("Circumstantial evidence may be sufficient to prove the forgery of a deed."); *Black v. Morton*, 234 Ark. 360, 352 S.W.2d 177, 179 (1961) ("All the circumstantial evidence indicates that the will is a forgery."). Thus, we agree with appellant that the court erred in striking the affidavits.[22]

■■■ Had the court not erred by striking the Hebron and Daral Smith affidavits, plaintiffs' opposition to Wells Fargo's summary-judgment motion would have sufficed to raise a genuine issue of material fact as to whether Wells Fargo's interest in the property was rendered void by a forgery, and the court could not properly have entered summary judgment in favor of Wells Fargo. We therefore conclude that the summary-judgment ruling cannot stand.

### III.

For the foregoing reasons, we uphold the ruling of the trial court that Wells Fargo is a BFP. That status, however, does not protect Wells Fargo if the POA was a forgery, an issue of fact raised by the Hebron and Daral Smith affidavits, which were competent evidence and should not have been stricken. Accordingly, we reverse the grant of summary judgment and remand to the trial court for trial on the forgery issue.

*So ordered.*

---

**22.** Appellant also cites as error the trial court's denial of the plaintiffs' motion to strike the Beckwith affidavit. In light of our disposition of the case, we need not discuss this claim. We note, however, that the assertions in the Beckwith affidavit—that the person who signed the POA in Beckwith's presence produced documentation identifying him as Willie Smith—added nothing of relevance to the (rebuttable) presumption that already attached to notary Beckwith's certification on the POA that "Willie Smith ... satisfactorily identified to me to be the person described in the foregoing Durable Power of Attorney as Principal, personally appeared before me and signed his name in my presence." *See Ford v. Ford*, 27 App. D.C. 401, 408 (D.C.1906) (explaining that a notary's "certificate of acknowledgment is prima facie proof of the facts it contains"); *see also Marden v. Hopkins*, 47 App. D.C. 202, 206–07 (D.C.1918) (citing "the well-established rule that to overcome the presumption arising from [a notary's] certificate there must be proof of gross concurrent mistake or fraud, through strong and disinterested evidence"); 1 Am.Jur.2d *Acknowledgments* § 81 (1994) ("If a certificate of acknowledgment is complete and regular on its face, the facts stated in the certificate are presumed to be true.").